BEFORE THE SECOND DIVISION, JULY 22, 1948

**No. 52482.**—American Express Company *v.* United States, petition 6569–R (New York).

TILSON, Judge: This petition praying for the remission of additional duties incurred by reason of undervaluation of imported merchandise on entry was

filed under the provisions of section 489 of the Tariff Act of 1930. The merchandise consists of orchid plants imported from Venezuela in May 1941 and entered at the port of New York.

Although the entries were made in the name of the American Express Company, the real importer appears to be H. J. Rapella of Hawthorne, Calif. It further appears that Mr. Rapella collected these orchid plants in the interior of Venezuela and arranged for their shipment to New York. When the merchandise arrived at New York, Mr. Rapella arranged with the American Express Company to make entry thereof. Both Mr. Rapella and the agent of the American Express Company, Mr. Giese, contacted the examiner of such merchandise at New York and inquired as to the proper value at which to make entry, presenting to him what is known as a "submittal sheet," upon which the examiner of merchandise, by means of a rubber stamp, imprinted the words "Ascertain from shipper the correct foreign or export value."

These orchid plants being of a different grade or quality from other orchid plants shipped from Venezuela to the United States, the only information the shipper Mr. Rapella, had as to the value thereof was the price which he had paid in the interior of Venezuela. Being confronted with this situation, it appears that the examiner of merchandise agreed with Mr. Giese that entry should be made at 15 cents for each plant and that the examiner would permit Mr. Giese to amend the entry later.

X Q. Mr. McLoone, at the first conversation Mr. Giese, of the American Express Company, had with you, which was prior to making Customs entry, didn't you tell him to make entry at 15 cents, and you would permit him to amend the entry later?—A. Yes, sir.

X Q. Didn't you just about two or three days before the time of your appraisement advise him that you wouldn't permit him to make amendment?—A. That is right. I said I would appraise the merchandise.

\* \* \* \* \* \* \*

Q. For purposes of clearing the record, did you refuse to allow the importer in this case, or the broker, to make any amendment?—A. I did not refuse to permit him to make amendment.

JUDGE KINCHELOE: As a matter of fact, you would have refused if he had requested it?

THE WITNESS: That is right.

Within one month after the entries in this case were filed, the examiner of merchandise caused an investigation to be instituted with a view to ascertaining the correct value of these orchid plants. It also appears that the appraisement at $1.92 per plant, net packed, was based upon information contained in that report.

The appraisement was made and based on an offer for sale by the shipper, who was also the importer, on one particular entry. Mr. Rapella was the shipper of the merchandise. He offered the merchandise at $2.00 a plant, c. i. f., New York, to the Pittsburgh Cut Flower Company, and based on that offer for sale, appraisal was made at $1.92 net, f. o. b.

While we are cognizant of the fact that proceedings for reappraisement of merchandise and proceedings for remission of additional duties are distinct and separate proceedings before this court in view of the peculiar circumstances surrounding this case we feel that it will shed considerable light upon this remission case to quote here from the decision in the reappraisement case (Reap. Dec. 6287), which, while the record therein has not been admitted in evidence herein, the decision being a public record we are at liberty to quote therefrom as follows:

The evidence is not of such a nature as to eliminate doubt on the question of the value of these orchids. However, it is my opinion and I so hold, that the value found by the appraiser, based as it is partly upon the offer and sale to the Pittsburgh Cut Flower Co., is not borne out by the evidence. The importer,

who had been an orchid dealer 11 years prior to his visit to Venezuela to purchase this merchandise, spent considerable time investigating market conditions in the sale of orchids there. His testimony, based upon his experience, is entitled to considerable weight, as is also his belief that the orchids here involved were of inferior quality and grade. Upon consideration of the additional evidence produced, I find that the merchandise consists of orchid plants which are inferior in grade to those sold in Venezuela for export to the United States; that there is no export value for this grade of orchid plants; that the proper basis of valuation is foreign value as defined in section 402 (c) of the Tariff Act of 1930; that such value is 40 cents per plant packed,* * *

When the importer in this case entered his merchandise he gave to Examiner McLoone all the information as to the value thereof which he possessed. So far as this record discloses, the only information the examiner was able to secure through an investigation of market conditions was that the importer had, at some time, presumably after entry, offered the merchandise covered by one entry to the Pittsburgh Cut Flower Company at a price higher than that at which entry was made. This is not a particularly disturbing situation, since if all importers offered and sold their merchandise at the price at which entered importers would not exist. Also when the importer departed for California, he instructed his agent here to keep in touch with the examiner and as soon as the examiner was able to get any value for the merchandise, if higher than that at which entry was made, to amend to that value and bill him for the charges. This certainly does not indicate that the importer was trying to deceive the appraiser as to the value of his orchids.

Regarding the purported sale of orchids to the Pittsburgh Cut Flower Company, there is no evidence in this record to show that the sale was ever consummated, and if so, at what price, and what is more, even if the sale were finally closed at the $2 figure per plant, that would constitute absolutely no evidence of any value under the law. Furthermore, it is hardly to be expected that an importer of merchandise should be required to tell the examiner the price at which he expects to offer the imported merchandise for sale in order to escape an arbitrarily high valuation of his merchandise by the examiner.

Considering this record as a whole, we are unable to find any indication of any attempt on the part of the importer to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the true value of the merchandise. The petition is therefore granted. Judgment will be rendered accordingly.